Summons Iss'd.
(WL)

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

FEB 1 3 2004
$150 Pd
LAWRENCE K. BAERMAN, CLERK
ALBANY

04-CV-0169
TJM DRH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AKIVA TALMI and SPORTS MARKETING
INTERNATIONAL, INC. d/b/a MOSCOW BALLET,

                                                 Plaintiffs,

    -against-

LAURA LEE, RYAN MUELLER, and SMALL WORLD
PROMOTIONS, LLC,

                                             Defendants.

**COMPLAINT**

Civ. No.

**JURY TRIAL
DEMANDED**

---

Plaintiffs Akiva Talmi and Sports Marketing International, Inc. d/b/a Moscow Ballet, by their attorneys, O'Connell and Aronowitz, as and for their Complaint for injunctive and declaratory relief and for damages, hereby allege, upon knowledge with respect to their own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF THIS ACTION

1.    Plaintiffs bring this action to enjoin the Defendants from causing them immediate and irreparable harm through acts of unfair competition and deceptive trade practices in violation of the federal Lanham Act and state laws.

2.     Defendant Laura Lee, in concert with Defendant Ryan Mueller, both former employees of SMI, have entered into and implemented a scheme to steal the name, reputation, work product and proprietary and confidential information of the Plaintiffs.

3.     Through various forms of communication – including a webpage for Small World Promotions, LLC, formed by Lee and Mueller for the very purpose of carrying out this scheme and in emails sent throughout the United States – the Defendants have portrayed themselves and Small World Promotions, LLC, as being the exclusive representatives of two Russian ballet groups and their artistic directors and as possessing years of experience in successfully producing and promoting a high quality, multi-city ballet presentation.  In these communications, it is the Plaintiffs' name, experience and reputation that the Defendants are representing as their own.

4.     In furtherance of these unlawful activities, the Defendants have made deceptive statements falsely associating themselves with Talmi's Russian ballet production, the Moscow Ballet, and passing off the skills, experience and credentials of SMI and Talmi as their own.  They have misappropriated, and converted to their own use, SMI's unique strategies, and other confidential and proprietary information, for producing and promoting the Moscow Ballet.  They have also knowingly and intentionally sought to interfere with SMI's existing contractual relationships with Russian ballet artists that perform in the U.S. as the Moscow Ballet.

5.     In fact, Talmi, through SMI, holds the exclusive U.S. rights to tour these Russian ballet  groups through the year 2006, and he has expended substantial financial resources to produce these groups under the name **MOSCOW BALLET** and to promote

2

their reputation throughout the United States. Small World is a novice in the field, and Lee and Mueller have no proven ability or even experience to produce a classical ballet performance on the scale or of the quality that the public, including sponsors and audiences, have come to expect from SMI.

6.     The Defendants' purposeful misrepresentations have caused – and unless immediately enjoined as requested herein will continue to cause – the likelihood of confusion as to the source, quality and identity of their ballet production and its relationship to the Moscow Ballet, thereby diluting the distinctiveness of the mark **MOSCOW BALLET** and destroying the reputation that Talmi has devoted his professional career to create.

7.     Upon information and belief, the Defendants conspired to form their competing promotion company, and took actions and made statements toward that end, while they were still in the employ of SMI, in breach of Lee's non-compete agreement with SMI and in violation of her fiduciary duty of loyalty to her employer.

8.     Accordingly, Plaintiffs bring this action to enjoin the Defendants from making any confusing or misleading statements regarding the Defendants' affiliation with Talmi, SMI, or the Moscow Ballet and from passing off their purported ballet tour as constituting the same tour, or involving the same artists, as the Moscow Ballet; from making any use of Talmi's mark **MOSCOW BALLET** to promote themselves and their own commercial activities; from seeking to induce any individual under exclusive option with SMI to breach their contractual obligations; and from engaging in any other activities constituting unfair competition or deceptive acts and practices with respect to

3

the Moscow Ballet; and to obtain damages arising from the Defendants' statements and actions to date.

### JURISDICTION AND VENUE

9.      This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§1331 and 1338 and over the state law claims under the principle of supplemental jurisdiction.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the transactions and events giving rise to Plaintiffs' claims have occurred and, unless enjoined, will continue to occur, in the Northern District of New York.

### THE PARTIES

11.     Plaintiff Akiva Talmi ("Talmi") is an individual residing at 365 Crane Avenue, Pittsfield, Massachusetts 01201. Plaintiff Talmi is the president and principal shareholder of Plaintiff SMI.

12.     Plaintiff Sports Marketing International, Inc. d/b/a Moscow Ballet ("SMI") is a corporation organized under the laws of the State of Delaware with its principal place of business located at 27 East Housatonic Street, Pittsfield, Massachusetts 01201.

13.     Defendant Laura Lee ("Lee") is a citizen of New York residing at 44 Griffin Road, Stephentown, New York 12169.

14.     Defendant Ryan Mueller ("Mueller") is a citizen of Arizona residing at 3423 North 28th Street, Phoenix, Arizona 85016-7027.

15.    Upon information and belief, Defendant Small World Promotions, LLC, a/k/a Small World Promotions ("Small World"), is a limited liability company formed on January 5, 2004 under the laws of the State of Delaware with its principal place of business located at 44 Griffin Road, Suite III, Stephentown, New York 12169.  Small World's registered agent for service of process is Delaware Intercorp, Inc., 113 Barksdale Professional Center, Newark, Delaware 19711-3258.

16.    Upon information and belief, Lee and Mueller are principals and managing partners of Small World and hold themselves out to be co-partners in and co-executive producers of Small World.

## FACTS GIVING RISE TO THESE CLAIMS

### Talmi's Professional Reputation

17.    Talmi has devoted his entire professional career to the production and promotion of fine arts and special events productions.  For close to three decades, he has focused his talents and efforts on the production of classical ballet performances involving artists from the former Soviet Union and Eastern Europe.

18.    Among other things, in 1981, Talmi co-created and booked the "Alexander Godunov Tour," a retrospective tour of the great Bolshoi ballet dancer.  In 1983, Talmi produced Leonid and Valentina Koslova's "Bolshoi to Broadway" tour. From 1983 to 1984, Talmi produced "Silk, Satin and Denim," a promotional and marketing project starring Bolshoi Ballerina Valentina Kozlova and NYC Ballet Ballerina Nina Fedorova.  In 1985, Talmi produced Valentina Kozlova's performance at IBM-Asia's "Gold Circle Award" annual marketing meeting. From 1989 to 1992, Talmi produced the First International Glasnost Festival, a 54-city tour featuring ballet stars

from Russia, China and Eastern Europe.  Since 1983, Talmi has produced these tours through his production corporation, SMI.

19.    Through these and other activities and accomplishments, Talmi has built a world-class reputation as a fine arts and special events impresario with the knowledge, financial resources and skills to produce the highest quality, and financially successful, classical ballet productions, which are known to be of great artistic merit.

**The Formation of the Moscow Ballet**

20.    Commencing in 1993, Talmi and SMI founded an original group, known as the "Moscow Ballet," to perform classical Russian ballets and repertory pieces before audiences throughout the United States and China.  The Moscow Ballet has achieved widespread success and is now entering its twelfth consecutive year of performance.

21.    In developing the Moscow Ballet, Talmi draws talent from classical ballet groups in Russia, including: (i) the National Classical Ballet of Russia, known in Russia as the "Rossyski Nationalni Ballet" (herein, the "Russian National Ballet"); and (ii) the Russian Academy of Theatre Arts, known in Russia as "GITIS" (herein, "GITIS").

22.    The Russian National Ballet is a group of Russian ballet dancers who join together for the primary purpose of touring the United States as part of the Moscow Ballet annual tour.  The Russian National Ballet's artistic director is Valery Lantratov ("Lantratov"), a talented dancer who has received recognition as an "Honored Artist of Russia," but is otherwise little known outside of Russia, except in connection with the Moscow Ballet.

6

23. By virtue of their association with Talmi and SMI, the Russian National Ballet and Lantratov have become closely linked in the minds of consumers with the Moscow Ballet.

24. GITIS, founded in 1878, is the oldest and largest theatre school in Russia. The artistic director of the GITIS ballet group is Vitali Akhoundov ("Akhoundov"), who is the Dean of Ballet Masters Faculty and a Professor of Choreography at GITIS in Russia. Akhoundov is an accomplished professional, who has trained dancers, researched and published in the field of classical dance, and received public recognition as an "Honored Artist of Russia."

25. By virtue of their association with Talmi and SMI, GITIS and Akhoundov have become closely linked in the minds of consumers with the Moscow Ballet.

26. The Moscow Ballet performs such classics as The Nutcracker and Swan Lake. Its dancers are graduates of the best ballet schools in Russia. Many have won medals in international dance competitions. They are considered to be among the finest classical dancers in the world.

**SMI's Performance Agreements with the**
**Russian National Ballet and GITIS**

27. Each year, Talmi, through his production company SMI, enters into a performance agreement with the Russian National Ballet and GITIS, and their artistic directors Lantratov and Akhoundov, to provide ballet performances under the name "Moscow Ballet." As an integral part of these arrangements, each of the performance agreements grants SMI an exclusive option to engage the Russian National Ballet and GITIS for other professional ballet tours in future years.

7

28.     In their most recent performance agreements, for example, SMI engaged the Russian National Ballet and GITIS, respectively, to perform in the Nutcracker and Swan Lake (or any other full length ballet or repertory of SMI's choice) during SMI's tour of the Moscow Ballet.  SMI also engaged Lantratov and Akhoundov to serve as a liaison between their respective ballet groups and SMI.  Lantratov and Akhoundov agreed, among other things, to provide the dancers and costumes, to stage the performances, to direct the rehearsals and otherwise to ensure that the Moscow Ballet is ready for the performance tour.  They agreed to conduct rehearsals between August 1 and October 25 and to participate in the tour between October 25 and December 31.

29.     With respect to performances in future years, SMI requested, and Lantratov and Akhoundov each granted SMI, an exclusive option to engage their ballet groups.  SMI's agreement with the Russia National Ballet and Lantratov states:

> **Future Tours:** SMI and The Contractor agree that SMI shall have the sole and exclusive option to engage The Contractor for Nutcracker or any other full-length ballet tours in the years 2003-2006.  SMI shall give notice of its election to engage The Contractor by giving The Contractor written notice by fax, mail or email of their intention to engage The Contractor prior to JULY 1 each year.  In all other respects, all of terms of this Agreement remain in full force and effect.

SMI's agreement with GITIS and Akhoundov contains substantially similar language, with the exclusive option running from 2002 through 2006.

30.     These exclusive options are essential to the success of SMI and its Moscow Ballet when it tours and performs throughout the U.S., because they ensure the continuity of the superior talent necessary to produce a ballet spectacular of the high

quality that sponsors and audiences have come to expect of Talmi, SMI, and their Moscow Ballet.

### SMI's Production and Promotion Efforts

31.     At their own financial expense, Talmi and SMI have engaged in extensive public relations and promotional campaigns to develop the reputation of the Moscow Ballet, to expand the base of audience interest and to promote public good will.  These efforts have given the mark **MOSCOW BALLET** a distinctive meaning and considerable value.

32.     Among other things, Talmi and SMI, in collaboration with a Russian set designer, developed and financed the production of a unique version of the classic ballet "Nutcracker."  This involved the development of original concepts and the design and creation of innovative stage sets, costumes, and props to enhance the theatrical appeal and marketability of the production.

33.     Talmi, through SMI, promoted this concept in a comprehensive marketing campaign.  SMI's adaptation, targeted specifically at U.S. audiences, sets the Moscow Ballet's Great Russian Nutcracker apart from every other version of the Nutcracker, in the U.S. and abroad, increasing the value of the Moscow Ballet.

34.     Talmi and SMI have developed innovative strategies for accessing non-traditional revenue streams.  These strategies increase the revenues of, and mitigate the financial risks inherent in, the production of ballet productions.  They are confidential and proprietary to Talmi and SMI.

35.     Talmi and SMI have also identified and implemented highly effective methods for identifying potential clients, sponsors, contacts and leads.  These methods

give the Moscow Ballet an advantage over competitors in securing sponsorships and obtaining tour commitments. They are confidential and proprietary to Talmi and SMI.

36.    In producing the Moscow Ballet tour over the years, SMI handles all of the logistics of the production. Among other things, each year Talmi approves the selection of approximately 100 professional Russian ballet artists to participate in its multi-city tour. SMI purchases international round-trip tickets to bring the Russian artists to the United States and, later, to return them to Russia. The dancers are in the United States from approximately October 25 to January 5. SMI pays them a per-show fee and covers the cost of hotel accommodations, meals and travel expenses throughout the length of the tour.

37.    SMI finances the creation, design, production and maintenance of the Moscow Ballet's 1,000 costumes and 20 stage backdrops. It leases tour busses, RVs and small trucks, and owns and maintains two 53' trucks, to transport the dancers, technical crew and equipment. It also leases heavy equipment, lighting packages and sound equipment to execute the performances.

38.    SMI organizes extensive outreach activities in the local communities where SMI's Moscow Ballet performs. Among other things, SMI sends Russian artists to local performance cities, in advance of scheduled performances, to audition local children to dance on-stage with the Russian professionals. These artists select approximately 60 children for each performance and then spend three to five days in each city to teach the children the dance steps for the production and to rehearse their performances.

39.    SMI conducts school assemblies, consisting of a ballet demonstration, a slide show presentation on Russian art and culture, and a question and answer session. It

provides free-of-charge to public schools a teacher's guide in preparation for the assembly programs. SMI's Moscow Ballet also sponsors the "Newspapers in Education" program, which provides free newspapers to students, and it conducts a national literacy contest for elementary school students. These programs enhance the Moscow Ballet's public image, increase its public appeal, and create name recognition.

40.    Talmi has applied for trademark protection for various service marks incorporating references to the Moscow Ballet and the Great Russian Nutcracker, including the **MOSCOW BALLET, MOSCOW BALLET'S GREAT RUSSIAN NUTCRACKER, MOSCOW BALLET'S GREAT RUSSIAN** and **MOSCOWBALLET.COM**. (Copies of the Applications for Registration are annexed hereto as Exhibit "A.") These applications are pending before the U.S. Patent and Trademark Office. Talmi has granted SMI a license to use the name **MOSCOW BALLET**.

41.    As a result of Talmi's efforts, the Moscow Ballet has become a tradition in many cities, returning year after year. The terms "Moscow Ballet" and the "Great Russian Nutcracker" have acquired a distinctive meaning in the public domain. This adds value to the name of the Moscow Ballet and the ballet performances it offers, which translates into increased ticket sales and greater box office revenues.

### SMI's Production and Promotional Staff

42.    The production and promotion of a fine arts presentation of the caliber of the Moscow Ballet requires the participation of a dedicated staff of experienced personnel and the expenditure of substantial financial resources.

11

43.    SMI maintains a year-round production office of five to ten full-time employees to carry out the logistics for each annual tour. These include:

- a group sales director, who contacts patrons interested in buying tickets for cities along the 84-city tour;

- a box office manager, who establishes or assists local box office managers in establishing ticketing arrangements in performance cities;

- a children's cast coordinator, who hires local ballet teachers in each local city to work with SMI's advance Russian artists and to rehearse the local children who receive roles in the Moscow Ballet's production;

- a hotel director, who coordinates hotel and meal accommodations for the Russian artists and coordinates the logistics of traveling from city to city;

- a public relations director, who prepares press materials, places advance stories on auditions and performances, and arranges for interviews with SMI's producer, artistic directors or dancers.

44.    Talmi and SMI's staff personnel, together with the artistic directors, attend to every detail of the production and promotion of the Moscow Ballet. SMI's staff also maintains the official Moscow Ballet websites, www.moscowballet.com and www.nutcracker.com, and handles thousands of merchandise orders for souvenirs and memorabilia for the Moscow Ballet.

**The Defendants' Employment with SMI**

45.    On or around August 22, 2001, Talmi hired Lee to work for SMI as a public relations liaison. Lee's responsibilities involved writing press releases, placing

feature stories in newspapers, and arranging for interviews on radio and television on behalf of SMI's Moscow Ballet. Lee held this position continuously through and including December 28, 2003, when she failed to return to her job responsibilities at the end of the Moscow Ballet's 2003 tour.

46.    In consideration of her employment, SMI and Lee entered into an agreement, dated August 23, 2001 (the Non-Compete Agreement) (Exhibit "B" hereto), in which SMI agreed to teach Lee the business of entertainment promotion, and Lee agreed not to start a competing theatrical promotion company.

47.    Specifically, the Non-Compete Agreement states, in pertinent part:

> I also agree that SMI, Inc. has agreed to teach me the promotion of the entertainment profession and I also agree to a "non-compete agreement clause". This "Non-Compete clause" means that I cannot and will not start another theatrical promoter company that would promote, represents talent, or sell or produce any entertainment shows including but no [sic] limited to fine arts production including ballet, other dance, symphony, pop, rock, rap country, parties, etc.

The Non-Compete Agreement is "binding within five years of termination of employment with SMI, Inc."

48.    Upon information and belief, Lee, a writer and former talk show host, had no experience in the production and promotion of Russian classical ballet prior to her employment with SMI.    The Non-Compete Agreement was essential to Lee's employment with SMI, given Lee's lack of experience, SMI's unique market niche, Talmi's extensive experience and contacts, the foremost reputation of the Moscow Ballet, and the limited nationwide demand for classical Russian ballet performances.

49.     To enable her to carry out her function as liaison to the press, Talmi provided Lee with direct instruction on every aspect of her work and shared with her the benefits of his decades of experience. In reliance on her purported good faith and loyalty, Talmi taught Lee the business of producing and promoting classical ballet productions. He gave her access to all of his leads and taught her his methods for accessing additional customer contacts. He taught her his unique strategies for accessing non-traditional revenue and conveyed to her other valuable confidential and proprietary information for the production and promotion of the Moscow Ballet.

50.     On or around October 28, 2003, Talmi hired Mueller to work for SMI as a technical director. Mueller's responsibilities involved working with local crews in each performance city to load in and out the performance sets, costumes, backdrops and props and to operate the lighting equipment during the shows. Mueller held this position continuously, through and including December 28, 2003, when the Moscow Ballet's 2003 tour ended.

51.     Upon information and belief, during the course of her employment with SMI, Lee disclosed SMI's valuable trade secrets and other confidential and proprietary information to Mueller, even though this information was not necessary to enable Mueller to perform his job.

**The Defendants' Unlawful Conduct**

52.     Commencing at a time presently unknown, but believed to have occurred during their employment with SMI, Lee and Mueller developed and implemented a scheme to appropriate Talmi's theatrical promotion company, and his own reputation, to themselves and for their own commercial uses.

14

53.    In furtherance of this scheme, the Defendants made numerous statements – on their Small World website (Exhibit "C" hereto), in emails sent from Lee's home and office in Stephentown, New York to SMI's business contacts and others located throughout the U.S. (Exhibit "D" hereto) and in other communications – designed to confuse SMI's clientele, media partners, sponsors and others, to misappropriate the commercial value of the Moscow Ballet, and to pass off the skills, experience and credentials of SMI and Talmi as their own.

54.    Defendants also misappropriated, and converted to their own use, SMI's unique strategies, and other confidential and proprietary information, for producing and promoting the Moscow Ballet.  Additionally, they knowingly, intentionally and tortiously sought to interfere with SMI's contractual relationships with the Russian National Ballet and GITIS.

55.    Among other things, the Defendants have falsely claimed in their website:

•    that the Defendants produce "fine arts tours for world renowned artists including Rossyski Nationalni Ballet" -- the Russian name for the Russian National Ballet which tours in the U.S. under the name "Moscow Ballet" – and "have extensive experience working on multiple city tours both on the road and behind the scenes."  In fact, Small World has never produced a ballet tour, and the only touring experience Lee and Muller have had took place during the November and December of 2003, and in their capacities as public relations liaison and technical director for the Moscow Ballet;

•    that Small World, Lee and Mueller are responsible for producing and promoting the Moscow Ballet's multi-city tours, including its successful 10th

15

Anniversary U.S. Tour. In fact it was SMI, under the direction and leadership of Talmi, that created the Moscow Ballet and produced and promoted the Moscow Ballet's 10th Anniversary Tour;

- that the Defendants have a "proven track record in print" and are responsible for "high profile personal appearances" by soloists of the Moscow Ballet at GM Headquarters in Detroit and the Rossyski Nationalni Ballet at Citadel Radio in Saginaw, Michigan. In fact the credit for these activities belongs to SMI and Talmi;

- that Lee wrote proposals to secure the Moscow Ballet's first national sponsorship. In fact the Erlick Group, New York City corporate sponsorship agency, is primarily responsible for securing this sponsorship, and Lee's participation in the process was largely administrative; and

- that Mueller's "work can be seen with Rossyski Nationalni Ballet (Russian National Ballet) where he is the Resident Lighting Director." In fact, Mueller was a technical director for SMI's Moscow Ballet.

56.     The Defendants also sent emails to patrons, sponsors, performance venues and customers – many of whom she know about or had access to only by virtue of her employment with SMI – passing off the Rossyski Nationalni Ballet (Russian National Ballet) tour as presenting the same tour, and involving the same artists, as the Moscow Ballet and attributing Plaintiffs' financial successes and accomplishments to themselves. Specifically, for example:

- in emails sent on January 6, 2004, to media partners, the Defendants stated:

Rossyski Nationalni Ballet (Russian National Ballet) would like to offer your station group a unique revenue enhancing opportunity. Rossyski Nationalni Ballet's premiere U.S. tour of Swan Lake as a marketing vehicle will bring you two sources of revenue – ticket sales and sponsorship income. Similar event marketing projects have earned radio partners between $100,000 and $300,000.

\*\*\*

Here are a couple of actual examples of potential ticket revenues: Detroit, MI: **Fox Theater** 4,857 seats. **$231,166.00 gross income** – 3 performances; San Diego, CA, **San Diego Concourse Convention & Performing Arts Center**, Civic Theatre, 2,992 seats, **$192,417.00 gross income** – 2 performances. (Emphasis added.)

- in an email sent January 18, 2004, to another media contact, Defendant Lee stated:

My name is Laura Lee. We met last year when you presented Moscow Ballet's Nutcracker. Following the tour, I have moved on to work on my own company and we will be producing a tour for the dancers you met for the first time under their own name. In tours around the world, this company is known as Rossyski Nationalni Ballet (Russian National Ballet).

We are putting together a Swan Lake tour in June and July. The tour will feature the ballerina you saw in the role of Odette/Odille and in the male principal role, we're bringing over a soloist from the Bolshoi Theatre, so this is going to be the highest quality production. It is directed by honored artist of Russia, Valeri Lantratov, who danced in Rudolf Nuryev's farewell tour.

As your sponsors got a preview of Swan Lake, I imagine they would be enthusiastic about supporting it this summer. Can I send you a proposal and/or set up a time to talk about Rossyski Ballet's Swan Lake?

- in an email sent January 23, 2004, to the contact person at a performance venue, Defendant Lee stated:

17

> This is Laura Lee, I don't know if you remember me, **I used to be with Moscow Ballet.  I have my own production company now**, Small World Promotions, and **we're working with Valeri Lantratov** to produce tours for him under his own company name, Rossyski Nationalni Ballet.  We're investing a little more of the money into the production, so he'll be able to bring over a Bolshoi star, and some top soloists.  We'll be doing Swan Lake this summer, Nutcracker in winger and Sleeping Beauty next summer.

> Valeri speaks very highly of you, and the members of the company who have been here before have developed a love of Youngstown from their past visits there.  (They had to go to Youngstown Dance Supply on their visit this year)

> I was wondering if Mercyhurst might be interested in presenting Rossyski Nationalni Ballet?  We might also be interested in teching our Swan Lake (June/July) production at Mercyhurst if the space were available, depending on the direction of our routing.  (Emphasis added.)

57.     These statements deceptively associate the Plaintiffs with SMI's Moscow Ballet and seek to pass off the Plaintiffs' actual financial results in prior production tours as being attributable to the Plaintiffs and as results that they can achieve.   These statements were calculated to and do capitalize on the reputation of SMI, Talmi and the Moscow Ballet by creating a likelihood of confusion about the identity of their ballet groups and the content and quality of their Defendants' proposed presentations.   The Defendants made these, and other similar statements, with knowledge of their falsity and with intent to deceive the public, including patrons and sponsors of classical Russian ballet productions.

58.     The Russian National Ballet's Lantratov has expressly disclaimed involvement in the Defendants' activities.  In a letter to the Defendants dated January 23, 2004, Lantratov stated:

> The National Classic Ballet of Russia dba Moscow Ballet, and Valeri Lantratov, have an exclusive and binding contract with SMI, Akiva Talmi, President. Please cease and desist immediately any and all efforts to promote, sell, produce or publicize any other entertainment related activities for me. Valery Lantratov and/or the Moscow Ballet and all and any other ballet dance companies' names that I use. You do not have any rights what so ever to represent me and/or Moscow Ballet.

59.    In connection with these false and misleading representations, the Defendants also made specific representations about the potential ticket revenues that could be expected to be achieved from title sponsorship rights to Rossyski Nationalni Ballet's Swan Lake. These income streams – *i.e.,* $231,166 in Detroit; $196,417 in San Diego; $192,000 in Dallas; $155,000 in Long Beach; $100,000 in Melbourne; $116,000 in El Paso; $70,000 in Poughkeepsie – represent the Moscow Ballet's actual results on the 2002 Nutcracker tour. These statements are confusing and deceptive because they misleadingly imply that Small World is responsible for these specific results and can be expected to achieve similar results in the future.

60.    The Plaintiffs' false statements and misrepresentations are likely to cause, and upon information and belief, have actually caused, actual and likely confusion in the market for patrons and sponsors of classical Russian dance presentations. This is reflected in a January 26, 2004 email from a representative of media giant Cox Entertainment (*see* Exhibit "D"), who notified Talmi that Lee and Mueller had contacted her about a possible Swan Lake production and said that she was "confused about who they are." She asked, "Could you let me know about the difference between Moscow Ballet and Russian National Ballet." It is further reflected in an email from a representative of Clear Channel Communications (*see* Exhibit "D"), who similarly

expressed confusion about the difference between Moscow Ballet and Russian National Ballet." Lee responded falsely to this email by disparaging SMI's right to promote "the same group of dancers, while simultaneously advancing SMI's prior results and "proven track record" to further her own competing business interests.

### The Irreparable Harm to Talmi and SMI

61.    The Defendants actions have caused and unless preliminarily and permanently enjoined as requested herein or are likely to continue to cause immediate and irreparable injury to SMI and Talmi in at least the following ways.

62.    First, the Defendants' actions have caused, and are continuing to cause, the likelihood of confusion in the public domain as to the origin and identity of their production, which they call the Rossyski Nationalni Ballet (Russian National Ballet), and its relationship to the Moscow Ballet. This confusion threatens to destroy the commercial value of the Moscow Ballet, and the reputation of Talmi himself, which plaintiffs have labored a lifetime to achieve.

63.    Second, the Defendants lack the capitalization and experience to produce ballet tours of the quality and caliber that the public has come to expect from SMI and the Moscow Ballet. The Defendants' productions, if they proceed at all, will necessarily be inferior to SMI's Moscow Ballet. This will further damage the Moscow Ballet's commercial reputation, devalue SMI's service marks, and destroy the trust and confidence that SMI and Talmi have taken years to establish.

64.    Third, if the Defendants' venture fails, as it almost certainly will, this will harm SMI's business and reputation by virtue of the confusion that has already occurred between the Moscow Ballet and the Russian National Ballet.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (For Violations of the Lanham Act)

65.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

66.    The Lanham Act, 15 U.S.C. § 1125(a), states, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

67.    Defendants have used Talmi's mark **MOSCOW BALLET** in the course of commerce to advertise Small World's alleged accomplishments.

68.    The use of **MOSCOW BALLET** by Defendants is likely to cause confusion, a mistake or deceive others regarding the affiliation or association of the Defendants with the Plaintiff.

69.    Defendants have also made false and misleading descriptions and false and misleading representations of fact, which are likely to cause confusion and deceive as

to the affiliation or association of the Defendants with the Plaintiffs, and as to the origin, sponsorship and approval of their services and commercial activities.

70.     By virtue of the foregoing, the Defendants have violated the Lanham Act.

71.     As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to Defendants profits, compensatory and treble damages, and injunctive relief, together with attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (For Breach of the Common Law Doctrine of Unfair Competition)

72.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

73.     By representing the accomplishments of Plaintiffs as their own, Defendants have misappropriated Plaintiffs' labors, expenditures, name and reputation.

74.     This misappropriation of Plaintiffs' labors, expenditures and skill was done in bad faith.

75.     This misappropriation is likely to cause confusion or to deceive purchasers as to the origin of the goods.

76.     By virtue of the foregoing, the Defendants have committed unfair competition in violation of the common law doctrine of unfair competition.

77.     Defendants actions are outrageous and extreme and constitute a fraud directed at the public generally.

78.     As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to compensatory and punitive damages and injunctive relief.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Against Lee for Breach of Contract)

79.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

80.     In connection with her employment, and to induce Talmi to teach her the business of entertainment promotion, Lee entered into a non-compete agreement with SMI. Under the Non-Compete Agreement, Lee agreed as follows:

> This "Non-Compete clause" means that I cannot and will not start another theatrical promoter company that would promote, represent talent, or sell or produce any entertainment shows including but no [sic] limited to fine arts production including ballet, other dance, symphony, pop, rock, rap country, parties, etc.

81.     This agreement is binding, by its terms, for five years after the termination of Lee's employment with SMI.

82.     Lee has established Small World within 30 miles of SMI, and has advertised herself as promoting ballet shows, including the Nutcracker, involving the same artistic directors and dancers that Talmi used in SMI's previous productions. Lee and Mueller have solicited SMI's customers, patrons, media partners and local performance venues.

83.     Lee began promoting Small World's ballet offerings in less than one month of her separation from SMI.

84.     By virtue of the foregoing, Lee has breached, and is continuing to breach, her contract with SMI.

85.    As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to compensatory damages and injunctive relief.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
#### (For Tortious Interference with Advantageous Relations)

86.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

87.    Defendants intentionally, tortiously and willfully interfered with Plaintiffs' advantageous economic contractual relations with Valeri Lantratov, by attempting to induce Lantratov to agree to leave SMI and Talmi and to use Small World, Lee and Mueller as his exclusive promoter.

88.    Defendants intentionally, tortiously and willfully interfered with Plaintiffs' advantageous economic contractual relations with the National Classical Ballet of Russia, by attempting to induce the National Classical Ballet of Russia to agree to leave SMI and Talmi and to use Small World, Lee and Mueller as its exclusive promoter.

89.    Defendants intentionally, tortiously and willfully interfered with Plaintiffs' advantageous economic contractual relations with Vitali Akhoundov, by attempting to induce Akhoundov to agree to leave SMI and Talmi and to use Small World, Lee and Mueller as his exclusive promoter.

90.    Defendants intentionally, tortiously and willfully interfered with Plaintiffs' advantageous economic contractual relations with GITIS, by attempting to induce GITIS to agree to leave SMI and Talmi and to use Small World, Lee and Mueller as its exclusive promoter.

24

91.     Defendants' interference with these advantageous economic contractual relations were calculated to cause damage to Plaintiffs in their lawful business.

92.     Defendants' interference was done without right or justifiable cause and resulted in actual damage and loss.

93.     Upon information and belief, at all relevant times the Defendants have had knowledge of the contracts.

94.     By virtue of the foregoing, the Defendants have tortiously interfered with Plaintiffs' advantageous economic contractual relations with its artists.

95.     As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to compensatory damages, together with costs and attorneys' fees.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (For Violations of the New York Anti-Dilution Law, N.Y. Gen. Bus. Law § 360-l)

96.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

97.     The New York Anti-Dilution Law, N.Y. Gen. Bus. Law § 360-l, states, in pertinent part:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

98.     Defendants have used Talmi's mark **MOSCOW BALLET** in advertising Small World's alleged accomplishments, thus associating Talmi's mark with Defendants' services.

25

99.    Talmi's mark **MOSCOW BALLET** is unique.

100.    Defendants' use of this mark is likely to injure the Plaintiffs' reputation, by raising the possibility that **MOSCOW BALLET** will lose its ability to serve as a unique identifier of Plaintiffs' product and confuse prospective customers.

101.    It is likely that Plaintiffs' business reputation, and the name of the **MOSCOW BALLET**, will be injured due to Defendants' unfair competition.

102.    By virtue of the foregoing, the Defendants have violated the New York Anti-Dilution Law and similar laws in the several states.

103.    As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to compensatory damages and injunctive relief.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (For Violations of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A)

104.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

105.    The Massachusetts Unfair Trade Practices Act, Mass. General Laws c.93A, § 2, provides in relevant part:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

106.    Defendants have used the mark **MOSCOW BALLET** in advertising Small World's alleged accomplishments, thus associating such trademark with Defendants' services.

26

107.     Defendants have misrepresented the experience and accomplishments of SMI as their own.

108.     Defendants' advertisements and representations directly and indirectly affect the people of Massachusetts, including the Plaintiffs, who live and work in Massachusetts, venues that host fine arts performances, media partners and potential attendees.

109.     Defendants' advertisements and representations were made in the conduct of commerce.

110.     Defendants' advertisements and representations fall within the penumbra of common-law, statutory or other established concepts of unfairness.

111.     Defendants' advertisements and representations are immoral, unethical and unscrupulous.

112.     Defendants' advertisements and representations cause substantial injury to Plaintiffs.

113.     By virtue of the foregoing, the Defendants have violated the Massachusetts Unfair Trade Practices Act and similar laws in the several states.

114.     As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to compensatory and punitive damages and injunctive relief, together with costs and attorneys' fees pursuant to Mass. General Laws c.93A, § 11.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
**(Against Lee for Breach of an Employee's Fiduciary Duty of Loyalty)**

115.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

27

116.    Lee was a managerial level employee with SMI, occupying a position of trust and confidence.

117.    Upon information and belief, in 2003 while employees of SMI, Lee and Mueller approached and attempted to solicit the Moscow Ballet's artists and artistic directors, while they were still in the employ of SMI, in an attempt to induce them to agree to leave SMI and Talmi and to use Small World, Lee and Mueller as exclusive promoter.

118.    These acts were disloyal, detrimental and contrary to the interests of SMI and constituted direct competition in the same field of business.

119.    By virtue of the foregoing, Lee breached her fiduciary duty to the Plaintiffs.

120.    As a result, the Plaintiffs have suffered and are suffering harm, and are entitled to recover Lee's compensation during the period of disloyalty and compensatory and punitive damages.

WHEREFORE, plaintiffs demand judgment as follows:

1)    Preliminarily and permanently enjoining the Defendants, together with their employees, agents and all persons acting in concert with or on behalf of them, directly or indirectly from:

a)    making any statement or representation that reflects any affiliation, connection or association between the Defendants, or any of them, and Talmi, SMI, the Moscow Ballet, or the artistic directors and dancers of the Russian National Ballet and GITIS;

b) making any statement or representation regarding or relying upon the nature, characteristics, qualities, origin and/or accomplishments of Talmi, SMI or the Moscow Ballet to promote the Defendants or their own commercial activities;

c) making any use of the mark **MOSCOW BALLET** to promote the Defendants or their own commercial activities;

d) inducing or attempting to induce any individual under contract with SMI, including without limitation the Russian National Ballet, GITIS, and their artistic directors, to breach their contractual obligations; and

e) otherwise engaging in any activities constituting unfair methods of competition or deceptive acts and practices with respect to Talmi, SMI, the Moscow Ballet, or the artistic directors and dancers of the Russian National Ballet and GITIS.

2) Preliminarily and permanently enjoining Defendant Lee, and any person acting in concert with her, from violating the terms of her restrictive covenant with SMI, and from making use of any confidential or proprietary information misappropriated from SMI;

3) Grant the plaintiffs compensatory and punitive damages in amounts to be proven at trial;

4) Grant the plaintiffs their attorneys fees, together with interest and costs; and

29

5)    Grant such further and additional relief as to this Court may seem just and proper.

DATED: February 13, 2004

O'CONNELL AND ARONOWITZ

By:

Jeffrey W. Sherrin
(Bar Roll No. 102601)
Attorney for Plaintiffs
54 State Street
Albany NY  12207-2501
(518) 462-5601

Of Counsel:

Adolph D. Seltzer, Esq.
501 Fifth Avenue, Suite 1803
New York, NY 10017
(212) 661-1873

Paul R. Levenson, Esq.
Kaplan & Levenson, LLP
630 Third Avenue
New York, NY 10017-6705
(212) 983-6900

G:\DATA\ATTORNEY\JBB\SMI\CPSMI-CM2.doc

30